IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY CLINTON OLDS

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

No. 3:13-CV-00849-HZ

OPINION & ORDER

Merrill Schneider
SCHNEIDER KERR & GIBNEY LAW OFFICES
P.O. Box 14490
Portland, OR 97293

    Attorney for Plaintiff

S. Amanda Marshall
United States Attorney, District of Oregon
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201

1 - OPINION & ORDER

Richard M. Rodriguez
SOCIAL SECURITY ADMINISTRATION
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Jeffrey Clinton Olds brings this action under the Social Security Act ("Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security denying Olds's claim for Title II disability benefits. For the reasons below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Olds was born in May of 1957 and was 42 years old at the alleged onset date of disability, January 11, 2010. Tr. 600. He finished one year of college and completed specialized training as a medical assistant and for his construction-related jobs. Tr. at 163. Mr. Olds applied for social security disability benefits in March of 2010, citing renal failure, severe asthma, an unspecified heart valve condition, and skin cancer. Tr. 19, 163. After a hearing on November 18, 2011, Administrative Law Judge ("ALJ") Catherine Lazuran notified Mr. Olds on December 16, 2011, that his claim was denied. The Social Security Administration ("SSA") Appeals Council denied Olds's request for review on March 20, 2013, making the ALJ's decision the Commissioner's final decision that is now before the court on appeal.

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence in the record. Accordingly, I will repeat evidence only as necessary to explain my decision.

2 - OPINION & ORDER

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding administrative law judge determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimants RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant

3 - OPINION & ORDER

number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir.1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## THE ALJ'S DECISION

At step one, the ALJ found Olds had not engaged in substantial gainful activity since the alleged onset date, January 11, 2010.  Tr. 593, Finding 2. The ALJ noted that Olds made an unsuccessful work attempt in August or September of 2010, and that he received approximately $200 per week from the Masonry Welfare Trust, but found these did not constitute substantial gainful activity. Id. at 593. At step two, the ALJ found Olds had the "following severe impairments: a history of two kidney transplants and polycystic kidney disease; urinary incontinence; and chronic obstructive pulmonary disease . . . ." Id., Finding 3. At step three, the ALJ found Olds's impairments did not meet or equal the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 595, Finding 4.  Next, the ALJ assessed Olds's RFC:

> [C]laimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). He can lift and carry twenty pounds occasionally and ten pounds frequently; he can stand and walk for four of eight hours; he can sit for six of eight hours; he needs an option to sit or stand; he can occasionally climb, kneel, crouch, crawl, and stoop; he should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; and he should have easy access to a restroom.

Tr. 595, Finding 5. At step four, the ALJ found that Olds could not perform his past relevant work. Tr. 600, Finding 6.

4 - OPINION & ORDER

At step five, the ALJ found Olds was not disabled because jobs existed in significant numbers in the national economy that he could perform, including representative occupations such as storage rental clerk and addresser. Tr. 600-01, Finding 10.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g)(2012); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

Mr. Olds argues the ALJ erred by failing to give proper weight to the opinions of two treating physicians, Dr. Benjamin Wachsmuth and Dr. Christopher Thomas. There are three sources of medical opinion evidence in Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine, 574 F.3d at 692 (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ can reject the uncontroverted opinion of a treating physician only for "clear and convincing reasons" supported with substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Reddick v. Chater, 157 F.3d

5 - OPINION & ORDER

715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and legitimate reasons" that are supported by substantial evidence. Id. (quoting Reddick, 157 F.3d at 725). The ALJ is not required, however, to give controlling weight to a treating doctor's opinion, even if that opinion is uncontroverted. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

For the reasons stated below, I find the ALJ gave clear and convincing reasons, supported by substantial evidence in the record, for discounting the opinions of Mr. Olds's treating physicians. The Commissioner's decision is, therefore, affirmed.

**I.    Dr. Wachsmuth's Medical Opinions**

There are two medical opinions in the record from Mr. Olds's primary care physician, Dr. Benjamin Wachsmuth. The first is a letter dated January 15, 2010, requesting Olds be excused from work for a month because of an unspecified medical condition. Tr. 208, 597. The ALJ gave "limited weight" to the 2010 letter because Dr. Wachsmuth "provided no explanation as to why the claimant needed to be off work" and the letter stated Olds needed only a month off of work, not the twelve months indicative of total disability. Tr. 597. The body of Dr. Wachsmuth's 2010 letter states in its entirety: "Please excuse Jeff[r]ey Olds from work from 1/15 through 2/15/10 due to [a] medical condition." Tr. 208. Social Security regulations "give more weight to opinions that are explained than to those that are not." Holohan v. Massanari, 246 F.3d 11895, 1202 (9th Cir. 2001). Further, an ALJ may discredit the opinion of a treating physician that is "conclusory, brief, and unsupported by the record as a whole." Batson, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). Finally, Dr. Wachsmuth's letter does not indicate Mr. Olds was disabled for the twelve months required to show total disability. Accordingly, I find that the ALJ did not err in giving "limited weight" to the 2010 Wachsmuth letter.

6 - OPINION & ORDER

The second opinion is a checkbox questionnaire Dr. Wachsmuth completed in November of 2011. He wrote that Mr. Olds suffered from a kidney transplant, aortic valve stenosis, diastolic heart failure, sleep apnea, asthma, and urinary incontinence. Tr. 583. Dr. Wachsmuth checked boxes indicating that Olds could stand and walk for ten minutes at a time, for about one of eight hours; he could sit for fifteen minutes at a time for two of eight hours; he could lift and carry ten pounds occasionally; he could occasionally reach, could frequently handle, finger, and feel, but should never climb, balance, stoop, bend, kneel, crouch, or crawl. The majority of Mr. Olds time should be spent, Dr. Wachsmuth explained, laying down. Tr. 584. Moreover, his symptoms and the side-effects of his medication were expected to impair his attention and concentration for even simple tasks, and likely cause Mr. Olds to miss at least two full workdays per month. Tr. 585. Although Dr. Wachsmuth did not explicitly state as much, the ALJ found that his responses to the 2011 questionnaire indicated Mr. Olds was no longer able to perform even sedentary work. Tr. 583–85; Tr. 598.

The ALJ gave three reasons for giving "little weight" to Dr. Wachsmuth's 2011 opinion: 1) the objective medical evidence in the record did not suggest symptoms of such severity that they would prevent Mr. Olds from performing sedentary work; 2) Mr. Olds's daily activities indicated he was not as limited as Dr. Wachsmuth suggested; and 3) the 2011 questionnaire was inconsistent with other medical opinions in the record. Tr. 598. I address Olds's objections to each of those reasons in turn.

### a. Objective Medical Evidence

Olds challenges the ALJ's conclusion that the medical evidence in the record did not support Dr. Wachsmuth's 2011 questionnaire responses that indicated Mr. Olds could not perform even sedentary work. The ALJ found Olds's diastolic heart failure and aortic valve

stenosis were diagnosed as mild; he did not receive any treatment for the conditions beyond a one-day emergency room visit on January 11, 2010, for chest tightness that the attending doctor opined was likely due to asthma. Tr. 593–94. A chest x-ray showed no active disease and an exercise stress test revealed mostly normal heart function, with a borderline evidence of anterspetal ischemia. Tr. 593. The treating emergency room physician reported that Mr. Olds could return to work on January 18, 2010. Tr. 593.

As for Mr. Olds's asthma, the ALJ pointed to medical records that showed he did have an "asthma exacerbation" in January of 2010 but that by March, 2010, he reported doing "much better" and admitted he was more compliant with his prescribed inhaler than in the past. Tr. 597. Treatment records from August of 2011 showed that his asthma was "very well controlled" with limited use of a rescue inhaler. Tr. 596.  The ALJ found that Olds's incontinence symptoms decreased with medication and, in any event, he had worked for many years with the issue since its onset in 2003, and nothing in the medical records suggested it had worsened. Tr. 597. At the time of the hearing, Olds had recently begun using a CPAP machine to treat his sleep apnea, and testified to some improvement in his symptoms. Tr. 594. Finally, the ALJ noted Olds's history of kidney transplants, but cited an April 2010 report from treating physician Dr. Thomas Batiuk that stated Mr. Olds was "doing well" and appeared to have stable kidney function. Tr. 294, 596.

The ALJ gave a detailed summary of the medical evidence in the record, pointed out the conflicts between Dr. Wachsmuth's opinion and the objective medical evidence, and found that the evidence did not support Dr. Wachsmuth's opinion that Mr. Olds could no longer work at a sedentary level. Tr. 598. An ALJ can permissibly discount the ultimate conclusions from a questionnaire that are not supported by the objective data or history contained in the record.

8 - OPINION & ORDER

Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Therefore, the ALJ did not err when she gave Dr. Wachsmuth's 2011 opinion "little weight."

Olds insists that the medical record as a whole shows he "suffers symptoms arising from severe asthma, kidney problems, and urinary incontinence," and argues the ALJ improperly selected "indications of improvement that paint an incomplete picture" of his symptoms. He cites, for example, a reported kidney infection in June of 2010, and an April, 2010, report on his asthma that stated it was "severe" and "persistent" as evidence the ALJ did not consider the entire record. Pl. Brief at 9.

At best those reports create ambiguities about the severity of Mr. Olds's symptoms and it is precisely the ALJ's role to examine all the clinical evidence in the record and to resolve any conflicts and ambiguities. Tommasetti, 533 F.3d at 1041. Mr. Olds essentially disagrees with the ALJ's weighing of the medical evidence and asks this court to adopt his interpretation of the record. While the evidence here may be amenable to more than one rational interpretation, the court cannot substitute its own judgment for that of the Commissioner. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The ALJ correctly applied the law and supported her findings with substantial evidence. Accordingly, this court must uphold her decision. Tommasetti, 533 F.3d at 1038 (citing Batson, 359 F.3d at 1193) (additional citation omitted)).

    **b. Daily Activities**

Next, Olds argues the ALJ erred when she discounted Dr. Wachsmuth's 2011 report because the severe limitations listed in it were inconsistent with Olds's daily activities, which included washing his vehicles, walking around to pick up trash, doing occasional yard work, shopping with his wife once a week, riding his motorcycle, and visiting the gym to lift weights. Tr. 598–99. It is true that the Social Security Act does not require claimants to be "utterly

incapacitated" to be eligible for benefits, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). But activities like going to the gym to lift weights, going shopping, and riding a motorcycle are inconsistent with Dr. Wachsmuth's opinion that the majority of Mr. Olds's time must be spent "lying down," that he cannot lift more than ten pounds, or that he can only stand and walk for ten minutes at a time. Tr. 583. Conflict with a claimant's daily activities is a legitimate basis for discounting a physician's opinion. Spence v. Colvin, No. 12-cv-00426-HU, 2013 WL 4083404 at *8 (D. Or. Aug. 11, 2013); Tommasetti, 533 F.3d at 1040. Moreover, those activities are indicative of the type of work the ALJ concluded Mr. Olds could perform—a limited range of light work. See Morgan v. Apfel, 169 F.3d 595, 600 (explaining that a claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work.").

Accordingly, I find the ALJ did not err in discounting Dr. Wachsmuth's 2011 opinion based on its contradiction with Mr. Olds's daily activities.

### c. Controverted or Uncontroverted Medical Opinions

Finally, Olds argues the ALJ improperly discounted Dr. Wachsmuth's 2011 questionnaire based on purported inconsistencies between it and other medical opinions in the record, including the 2010 Wachsmuth letter, and a 2011 letter from Dr. Thomas stating that Mr. Olds could no longer work as a laborer. Tr. 409, 598.

The ALJ found the Wachsmuth opinions inconsistent because the 2010 letter only excused Olds from work for a month, while the 2011 opinion essentially concluded that Olds could not perform even sedentary work. But those opinions are not incongruent. The 2010 letter is perhaps better understood as excusing Mr. Olds from work for at least a month; Dr. Wachsmuth did not affirmatively indicate that Mr. Olds could return in one month's time. See

Tr. 208. And while it is true that Dr. Wachsmuth did not "describe any objective evidence that [Olds's] impairments had worsened since January of 2010 to support a conclusion of total disability," Tr. 598, that alone does not make the statements inconsistent. Dr. Wachsmuth's hopeful prognosis in January of 2010 cannot fairly be characterized as inconsistent with another report over 18 months later that indicated his conditioned had worsened in the interim.

The same is true for the ALJ's comparison of Dr. Wachsmuth's 2011 opinion and the 2011 Thomas letter opining that Mr. Olds was "unable to return to work as a laborer . . . with no possibility of being able to return to this type of work for the foreseeable fu[t]ure." Those opinions are not necessarily contradictory. A claimant who could not, as Dr. Wachsmuth's 2011 questionnaire indicated, perform even sedentary work would also be unable to perform heavy work as a laborer.

But any error the ALJ committed by attempting to manufacture a contradiction between the opinions of Olds's various medical providers is harmless. The distinction between an "uncontroverted" opinion and a "controverted" one is that the ALJ can only reject an uncontroverted opinion of a treating physician for "clear and convincing reasons" supported by substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). An ALJ facing a controverted opinion need only provide "specific and legitimate reasons" for rejecting it." Id. As explained above, the court finds the ALJ satisfied the more demanding "clear and convincing" standard by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation of the evidence, and explaining the reasons why she discounted Dr. Wachsmuth's opinion. See Batson, 359 F.3d at 1195 (finding ALJ did not err in discounting treating physicians' opinions that were conclusory and unsupported by record); Tommasetti, 533 F.3d at

11 - OPINION & ORDER

1041 (citation omitted) (explaining an ALJ can reject a treating physician's opinion by setting forth a detailed explanation of the facts and conflicting evidence, stating her interpretation thereof, and making findings).

Therefore, I find the ALJ did not err in discounting Dr. Wachsmuth's 2011 opinion.

**II.    Dr. Thomas's Medical Opinions**

Mr. Olds also argues the ALJ improperly discounted the opinion of Dr. Christopher Thomas, Olds's treating nephrologist, that Olds was unable to work throughout most of 2010. Tr. 597. The court again finds the ALJ met her burden to provide "clear and convincing reasons," supported by substantial evidence in the record for discounting Dr. Thomas's opinion. Orn, 495 F.3d at 632 (citation omitted).

Dr. Thomas first excused Mr. Olds from work in February of 2010. He explained that Mr. Olds's conditions included diastolic heart failure, aortic valve stenosis, kidney transplant, and asthma symptoms, and stated Mr. Olds was unable to work from January 11, 2010 until he was re-evaluated in four to six months. Tr. 207, 597. In June of 2010, Dr. Thomas asked that Olds be excused from work for an additional two to three months because of a recent infection of his kidney transplant, a lesion on his ureter, "resistant hypertension," urinary incontinence, and asthma that, although near baseline, tended to "wax and wane." Tr. 206.  And in May of 2011, Dr. Thomas wrote a letter stating that Mr. Olds could not return to work as a laborer because of dyspnea, neuropathy, and chest pain. Tr. 409.

As explained above, Mr. Olds heart conditions were diagnosed as mild and his asthma was generally controlled with medication. Tr. 593–94, 596. His incontinence was generally controlled with medication and he had been able to work in the past with the same condition. Tr. 597.  Finally, the medical records indicated Olds's hypertension was generally controlled with

medication, and that the possible lesion was a minor edema. Tr. 597. The ALJ gave a detailed explanation of the objective medical evidence, and found that it did not show impairments that caused symptoms or limitations that made Mr. Olds totally disabled and unable work for twelve months or more since the onset date. Therefore, the ALJ met her burden to give "clear and convincing" reasons for discounting Dr. Thomas's 2010 opinions. Tommasetti, 533 F.3d at 1041.

The ALJ gave "some" weight to Dr. Thomas's 2011 letter excusing Mr. Olds from working as a laborer because the medical record and Mr. Old's daily activities supported the conclusion he should be limited to work involving only light exertion. Tr. 409; 597. The ALJ incorporated appropriate limitations into the RFC when she found that Mr. Olds was capable of performing a limited range of light exertional work. Tr. 595–97. See Matney, 981 F.2d 1016, 1020 (9th Cir. 1992) (Doctor's opinion claimant was unable to return to work as a heavy laborer did not preclude light or sedentary work).

Mr. Olds objects to the ALJ's discounting of Dr. Thomas's letters on the same grounds that he challenged the ALJ's weighing of Dr. Wachsmuth's opinions: that the ALJ improperly chose to highlight select indicators of improvement from the record, and essentially substituted her own judgment regarding the severity of Mr. Olds's symptoms. Pl. Brief at 8–9. Again, while the evidence in the record may fairly support Mr. Olds's interpretation, it also supports the ALJ's conclusions. Where the evidence is amenable to more than one interpretation, it is the ALJ's responsibility to weigh the evidence and resolve the ambiguities. Tommasetti, 533 F.3d at 1041. So long as the ALJ's conclusion is supported by substantial evidence and free from legal error, as is the case here, the court should not overturn it. Valentine, 574 F.3d at 690.

In sum, the court finds the ALJ gave "clear and convincing reasons" supported by substantial evidence in the record for discounting the opinions from Mr. Olds's treating doctors.

13 - OPINION & ORDER

The ALJ found Mr. Old's daily activities were inconsistent with the severe limitations recommended by Dr. Wachsmuth, and the ALJ set out a detailed explanation of the conflicting medical evidence in the record and found it did not support the doctor's conclusions that Mr. Olds could not perform even sedentary work. To the extent the medical evidence is ambiguous, i.e., that it could support more than one reasonable interpretation, the ALJ supported her conclusion with substantial evidence, and the court defers to the ALJ as the fact-finder responsible for resolving those ambiguities.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this 22 day of July, 2013.

/s/ Marco Hernandez
MARCO A. HERNANDEZ
United States District Judge

14 - OPINION & ORDER